UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

_____

HILARY MAHAR,
     *Plaintiff*,

v.                            Civil Action No.: _____

BOSTON UNIVERSITY;
SIOBHAN O'MAHONEY;
and JONATHAN WHITE,
     *Defendants*.

_____

## VERIFIED COMPLAINT AND JURY DEMAND

## INTRODUCTION

1. This civil rights and breach of contract action arises from Defendants' unlawful refusal to implement and honor disability accommodations approved for Plaintiff, a doctoral student with a medically documented traumatic brain injury.

2. Plaintiff Hilary Mahar was a high-performing doctoral candidate whose academic record, research output, and professional trajectory demonstrated substantial promise in her field.

3. After Plaintiff sustained a traumatic brain injury, Boston University's Disability & Access Services ("DAS") formally determined that Plaintiff remained qualified to continue her doctoral studies with reasonable accommodations.

4. Despite this determination, Defendants interfered with, reduced, and ultimately failed to implement those accommodations, forcing Plaintiff to sit for a high-stakes qualifying examination without the supports necessary to accommodate her disability.

5. Defendants' conduct was intentional, knowing, and in reckless disregard of Plaintiff's federally and state-protected rights.

6. As a direct result of Defendants' conduct, Plaintiff was failed on her qualifying examination and dismissed from her doctoral program, causing severe academic, professional, and personal harm.

## PARTIES

7. Plaintiff Hilary Mahar is an individual residing in Westwood, Massachusetts.

8. Defendant Boston University ("BU") is a private university located in Boston, Massachusetts, and receives federal financial assistance.

9. Defendant Siobhan O'Mahoney is a faculty member and advisor employed by BU who exercised supervisory authority over Plaintiff.

10. Defendant Jonathan White is an administrator within BU's Disability & Access Services office who was responsible for evaluating and implementing accommodations.

## JURISDICTION AND VENUE

11. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and supplemental jurisdiction over related state and federal claims.

12. The Plaintiff exhausted her administrative remedies by filing a complaint with the Massachusetts Commission Against Discrimination ("MCAD") and then removed to this Court after ninety (90) days pursuant to G.L. c. 151B §9.

## FACTS COMMON TO ALL COUNTS

### Admission, Academic Performance and Employment By Boston University

13. Plaintiff was admitted to BU's doctoral program in Strategy and Innovation in or about August 2022.

14. Plaintiff consistently performed at a high academic level, maintaining a GPA of approximately 3.73.

2

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

15. Plaintiff presented research at major academic conferences and was progressing toward completion of her doctoral degree.

16. Upon information and belief, similarly situated doctoral students without disabilities who maintained comparable academic standing were permitted to progress through program milestones, including qualifying examinations, without irregular modification of accommodations or procedures.

17. At all times relevant, the Plaintiff functioned as an employee of Boston University, subject to its control, direction, and management, as evidenced by the structure of her compensation, the nature of her duties, and the degree of supervision exercised over her work.

18. The Plaintiff was compensated by Boston University in a manner consistent with traditional employment. She received hourly wages for both her Research Assistant work and her Teaching Fellow roles, and she was issued W-2 tax forms for multiple years, reflecting her status as an employee rather than an independent contractor. Her compensation was processed through the University's payroll systems, and she was required to track and submit her hours through SAP, further demonstrating a formal employer-employee relationship governed by institutional procedures.

19. In addition to compensation, the Plaintiff performed core instructional duties integral to the University's academic operations. Her responsibilities included lecturing, grading, holding office hours, responding to student inquiries, addressing student concerns, and, in certain instances, developing course materials. These tasks are quintessential functions of instructional staff and directly supported Boston University's undergraduate and MBA

3

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

programs. The University relied on her to fulfill these responsibilities in courses that would otherwise require compensated faculty.

20. The Plaintiff's teaching responsibilities were not merely incidental or academic exercises, but rather were assigned and structured by Boston University. Although her Ph.D. program required service as a Teaching Fellow for one course, the Plaintiff in fact served as a Teaching Fellow for four courses, including three MBA-level courses. These additional teaching assignments were not required for degree completion, yet were undertaken at the University's direction and for its benefit, further evidencing an employment relationship beyond academic requirements.

21. Boston University exercised substantial control over the manner and means by which the Plaintiff performed her work. She was supervised by faculty members and academic departments, including the Strategy and Innovation Department and the Accounting Department. These supervisors provided instruction, guidance, and informal performance feedback. The Plaintiff was required to adhere to prescribed course structures, teaching methods, and instructional frameworks established by the University and its faculty, demonstrating that her work was not autonomous but instead directed and controlled by the institution.

22. The Plaintiff's work schedule and time commitments were likewise controlled and structured by Boston University. She devoted approximately five hours per week to teaching-related duties during each academic semester in which she served as a Teaching Fellow. Her hours were tracked, reported, and approved through the University's administrative systems, reinforcing the existence of a managed and monitored work arrangement typical of employment.

4

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

23. The University also imposed policies and expectations on the Plaintiff consistent with those applicable to employees. She received formal appointment documentation for her teaching roles and operated under University policies, codes of conduct, and academic standards. In practice, she functioned as a junior member of the faculty, with access to institutional teaching resources and responsibilities aligned with those of instructional staff.

24. Boston University derived substantial benefit from the Plaintiff's work. She performed essential instructional functions, including facilitating course delivery, managing assignments through online platforms, coordinating guest speakers, grading coursework, and determining final grades. These contributions were integral to the operation of the University's academic programs and directly supported its educational mission.

25. The manner in which the Plaintiff was represented within the University further reflects her employee status. She was routinely referred to as a "Teaching Fellow," "Instructor," or "Faculty," and was designated within the University's teaching platforms as an "instructor," with authority to manage course content and student evaluations. These designations are consistent with roles traditionally held by employees engaged in instructional services.

26. At all times relevant, the Plaintiff was not functioning as an independent trainee or student alone, but rather as an employee under the control, scheduling, and management of Boston University.

**<u>Injury and Medical Documentation</u>**

27. In or about April 2024, Plaintiff sustained a medically documented mild traumatic brain injury also known as a "TBI."

5

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

28. There is no dispute that the Plaintiff suffered a TBI, that it was a legitimate condition that was documented and the Defendants were notified and on notice of same.

29. As a result of this injury, Plaintiff experienced cognitive impairments, including processing, speed limitations, fatigue, and difficulties with sustained concentration.

30. Plaintiff promptly notified BU and submitted medical documentation to DAS supporting her need for accommodations.

31. BU's published policies, including its Disability & Access Services procedures and student handbook, require the prompt, consistent, and good-faith implementation of approved accommodations and prohibit unilateral modification absent appropriate review.

### Accommodation Approval

32. DAS evaluated Plaintiff's documentation and approved reasonable accommodations, including extended time for examinations and related academic adjustments.

33. DAS determined that Plaintiff remained qualified to continue in her doctoral program with these accommodations.

34. Plaintiff reasonably relied on DAS's determination and expected that BU faculty and administrators would implement the approved accommodations in accordance with institutional policy.

35. Upon information and belief, BU's internal procedures required coordination between DAS and faculty to ensure that approved accommodations were implemented in full and without interference.

### Interference with Accommodations

36. Defendant O'Mahoney objected to Plaintiff receiving accommodations.

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

37. Upon information and belief, Defendant O'Mahoney expressed hostility toward the provision of accommodations, including concerns that such accommodations would "lower academic standards" or otherwise provide Plaintiff with an unfair advantage.

38. Defendant O'Mahoney communicated opposition to DAS and/or otherwise interfered with implementation of the accommodations.

39. As a result, Defendant White, acting within DAS, reduced or modified Plaintiff's previously approved accommodations without adequate medical, procedural, or policy-based justification.

40. These actions violated BU's own written policies and procedures governing disability accommodations.

41. These actions were taken despite Defendants' knowledge of Plaintiff's documented disability and need for accommodations, and in conscious disregard of Plaintiff's rights.

42. Upon information and belief, Defendants engaged in internal communications, including but not limited to emails, memoranda, and meeting discussions, concerning Plaintiff's accommodations and academic status, which reflect the decision-making process underlying the reduction and denial of accommodations.

### Qualifying Examination Process

43. Plaintiff was required to sit for a qualifying examination that was high-stakes and determinative of her continuation in the program.

44. The examination was administered without the full accommodations originally approved by DAS.

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

45. The examination content bore little relationship to Plaintiff's coursework and academic preparation and was heavy in subject matter that was more in line with the department of her advisor who had just changed departments.

46. Upon information and belief, this change was both willful and intentional so as to make it more difficult for the Plaintiff to pass her qualifying examination and to remain in the doctoral program.

47. Defendants failed to provide clear standards, criteria, or consistent procedures governing the examination.

48. Upon information and belief, non-disabled students were afforded examinations administered in accordance with established program standards and without last-minute alteration of testing conditions, content or subject matter.

49. Upon information and belief, similarly, situated students without disabilities were not subjected to comparable irregularities.

50. Plaintiff was thereby placed at a substantial and unfair disadvantage.

51. Upon information and belief, Defendants deviated from established academic and administrative procedures in Plaintiff's case in a manner that disproportionately and adversely affected Plaintiff because of her disability.

52. Upon information and belief, Defendants created, reviewed, and relied upon internal communications, grading materials, and evaluative documents, including but not limited to emails, draft assessments, and faculty deliberations, in reaching the decision to fail Plaintiff.

8

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

53. The irregularities in the examination process, including the denial of full accommodations and departure from standard practices, were pretextual and served as a mechanism to justify an adverse academic decision.

54. Defendants' stated reasons for Plaintiff's failure were not the true reasons, but instead were a pretext for discrimination and retaliation.

55. By forcing the Plaintiff to take her qualifying examination without the approved accommodations and against the advice and recommendations set forth in her medical documentation provided to BU, the Defendants exacerbated and worsened the Plaintiff's TBI as they knew or should have known that subjecting the Plaintiff to the qualifying examination without the full and approved accommodations would lead to challenges with processing speed limitations, increased fatigue and increased difficulty with sustained concentration.

56. The Plaintiff had none of these challenges or limitations prior to her injury.

**Dismissal**

57. Plaintiff was failed on the qualifying examination.

58. As a direct consequence, Plaintiff was dismissed from the doctoral program.

59. Defendants' actions were a direct and proximate cause of Plaintiff's failure and dismissal.

60. Upon information and belief, Defendants' conduct reflected bad faith, including intentional disregard of approved accommodations and manipulation of academic processes to ensure Plaintiff's failure.

61. Upon information and belief, BU has engaged in similar conduct with other students with disabilities, including failure to implement accommodations and reliance on academic processes to effectuate discriminatory outcomes.

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

**Damages**

62. As a result of Defendants' conduct, Plaintiff has suffered significant damages, including but not limited to:

a. Permanent interruption and loss of her doctoral education;

b. Loss of a professional academic career trajectory, including anticipated employment as a professor, researcher, or academic professional;

c. Loss of lifetime earning capacity, which upon information and belief exceeds several million dollars over the course of Plaintiff's expected career;

d. Loss of research opportunities, publications, grant funding, and conference participation;

e. Loss of professional reputation and standing within her academic field;

f. Out-of-pocket educational expenses, including but not limited to the following:  giving up a lucrative career in the private sector, which included base salary, incentives, stock, stock options, fully covered health insurance,  membership into the Academy of Management and Strategy Management Society, associated conference fees, and travel costs; costs associated with attending a week long specialized training held in Amsterdam.

g. In reliance on BU's acceptance of the Plaintiff into the Doctoral program, her relocation expenses, housing, utilities, driving, parking, books, computer and every "wrap around" cost to tuition as a Ph.D. student and for the same needed to serve as a Teaching Fellow.

h. Medical expenses associated with treatment of her injury and exacerbated symptoms;

i. Severe emotional distress, anxiety, humiliation, and loss of enjoyment of life;

j. Worsening and prolongation of symptoms associated with her traumatic brain injury;

k. Delay or permanent derailment of entry into her chosen profession;

l. Costs associated with attempting to obtain alternative education or employment pathways;

m. Other economic and non-economic damages to be proven at trial; and

n. Costs, interest and reasonable attorney's fees incurred in pursuing and vindicating her rights under state and federal law.

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

**Pattern And Practice Of Discrimination, Interference, And Bad Faith Conduct**

63. Plaintiff incorporates the foregoing allegations.

64. Upon information and belief, the conduct described herein was not isolated, inadvertent, or the result of mere negligence, but rather reflects a pattern and practice of conduct by Defendants in their treatment of students with disabilities.

65. Upon information and belief, Boston University, through its agents, faculty, and administrators, has engaged in a recurring course of conduct in which approved disability accommodations are disregarded, modified, or undermined outside of established procedures.

66. Upon information and belief, Defendants have permitted faculty members and administrators, including those without appropriate authority or training, to interfere with or override determinations made by Disability & Access Services.

67. Such interference has occurred without meaningful oversight, accountability, or adherence to institutional policies or applicable law.

68. Upon information and belief, Defendants have utilized academic processes, including examinations and evaluations, as mechanisms to effectuate or justify adverse outcomes against students with disabilities, including through deviation from standard procedures and reliance on pretextual reasoning.

69. Upon information and belief, similarly situated students without disabilities have not been subjected to comparable interference, irregular procedures, or adverse treatment.

70. Defendants' conduct reflects a systemic failure to implement, monitor, and enforce compliance with disability accommodation requirements, despite knowledge of the legal obligations imposed by federal and state law.

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

71. Defendants were aware, or should have been aware, that such practices created a substantial risk of harm to students with disabilities, including the denial of equal access to educational programs and the risk of academic failure and dismissal.

72. Notwithstanding such knowledge, Defendants failed to take reasonable steps to correct, prevent, or remediate such conduct.

73. Instead, Defendants tolerated, permitted, and/or ratified such conduct, thereby creating and maintaining an environment in which disability accommodations could be disregarded with impunity.

74. Defendants' actions and omissions demonstrate deliberate indifference to the rights of students with disabilities, including Plaintiff.

75. Defendants' pattern and practice of conduct was undertaken knowingly, willfully, and/or with reckless disregard for the rights of Plaintiff and others similarly situated.

76. Such conduct supports the imposition of enhanced damages and other relief as permitted by law.

### COUNT I – DISABILITY DISCRIMINATION (M.G.L. c. 151B)

77. Plaintiff incorporates the foregoing allegations.

78. Plaintiff is an individual with a disability within the meaning of M.G.L. c. 151B.

79. Plaintiff was otherwise qualified to participate in Boston University's doctoral program and to perform its essential requirements, with or without reasonable accommodations.

80. Defendants had actual knowledge of Plaintiff's disability and her need for accommodations.

81. Defendants failed to provide and implement reasonable accommodations approved by the University's Disability & Access Services.

12

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

82. Defendants interfered with, reduced, and denied such accommodations in deviation from established policies and procedures.

83. Defendants subjected Plaintiff to unequal treatment as compared to similarly situated non-disabled students.

84. Defendants relied on pretextual academic justifications and irregular procedures to justify adverse actions.

85. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff was denied equal access to educational opportunities, failed her qualifying examination, and was dismissed from the program.

86. Defendants' conduct was intentional, willful, and undertaken in bad faith.

87. As a result, Plaintiff suffered damages.

## COUNT II – RETALIATION (M.G.L. c. 151B)

88. Plaintiff incorporates the foregoing allegations.

89. Plaintiff engaged in protected activity by requesting disability accommodations and asserting her rights under state and federal law.

90. Defendants had knowledge of Plaintiff's protected activity.

91. Defendants subjected Plaintiff to adverse actions, including interference with accommodations, imposition of irregular examination conditions, failure of the qualifying examination, and dismissal.

92. There is a causal connection between Plaintiff's protected activity and the adverse actions.

93. Defendants' stated reasons for their actions were pretextual.

13

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

94. Defendants' conduct was retaliatory and intended to punish Plaintiff for asserting her rights.

95. As a direct and proximate result, Plaintiff suffered damages.

### COUNT III – AIDING AND ABETTING (M.G.L. c. 151B §4(5))

96. Plaintiff incorporates the foregoing allegations.

97. Individual Defendants O'Mahoney and White knowingly and substantially assisted and facilitated discriminatory conduct.

98. Defendant O'Mahoney actively opposed and interfered with the implementation of Plaintiff's accommodations.

99. Defendant White reduced and modified accommodations without proper authority, justification, or compliance with institutional policy.

100. Each individual Defendant acted with knowledge of Plaintiff's disability and protected rights.

101. Their conduct materially contributed to and enabled the discriminatory acts of Boston University.

102. As a direct and proximate result, Plaintiff suffered damages.

### COUNT IV – INTERFERENCE (M.G.L. c. 151B §4(4A))

103. Plaintiff incorporates the foregoing allegations.

104. Plaintiff had the right to reasonable accommodations and equal access to educational opportunities.

105. Defendants interfered with, restrained, and denied Plaintiff's exercise and enjoyment of those rights.

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

106. Such interference included obstruction and reduction of approved accommodations and manipulation of academic processes.

107. Defendants' conduct was intentional and undertaken with knowledge of Plaintiff's protected rights.

108. As a direct and proximate result, Plaintiff suffered damages.

## COUNT V – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT (ADA)

109. Plaintiff incorporates the foregoing allegations.

110. Defendant Boston University is a place of public accommodation within the meaning of the ADA.

111. Plaintiff is a qualified individual with a disability under the ADA.

112. Plaintiff was otherwise qualified to participate in the doctoral program, with or without reasonable accommodations.

113. Defendants had actual knowledge of Plaintiff's disability and her need for accommodations.

114. Defendants denied Plaintiff full and equal access to the program by failing to implement approved accommodations and by imposing discriminatory and irregular academic conditions.

115. Defendants required Plaintiff to participate in a high-stakes qualifying examination without the accommodations necessary to ensure equal access.

116. Defendants' actions created a substantial likelihood that Plaintiff would fail and be dismissed.

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

117. Defendants acted with deliberate indifference to Plaintiff's federally protected rights by knowingly disregarding the risk that their conduct would deprive Plaintiff of meaningful access.

118. Boston University failed to implement adequate oversight or safeguards to ensure compliance with disability laws and prevent interference by faculty and administrators.

119. As a direct and proximate result, Plaintiff was denied equal access, failed her examination, and was dismissed from the program.

120. Plaintiff suffered damages as a result.

## COUNT VI – REHABILITATION ACT of 1973

121. Plaintiff incorporates the foregoing allegations.

122. At all times relevant, plaintiff had a physical or mental impairment that substantially limited one or more major life activities.

123. Plaintiff is an individual with a disability within the meaning of Section 504 of the Rehabilitation Act.

124. Defendant Boston University receives federal financial assistance.

125. Plaintiff was otherwise qualified to participate in the doctoral program, with or without reasonable accommodations.

126. Defendants had actual knowledge of Plaintiff's disability and her need for accommodations.

127. Plaintiff was excluded from participation in, denied the benefits of, and subjected to discrimination in Defendant's program.

128. Such exclusion and discrimination occurred solely by reason of Plaintiff's disability.

16

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

129. Defendants interfered with, reduced, and failed to implement approved accommodations.

130. Defendants acted with deliberate indifference by consciously disregarding the known risk that Plaintiff would be denied meaningful access to her program of study if not granted the previously approved accommodations.

131. As a direct and proximate result, Plaintiff was dismissed and suffered damages.

## COUNT VII – BREACH OF CONTRACT

132. Plaintiff incorporates the foregoing allegations.

133. Plaintiff had a contract with BU governing her enrollment in the Ph.D. program and her work for BU.

134. Boston University's policies, including DAS procedures and student handbooks, form part of the contractual relationship between Plaintiff and the University.

135. The accommodations approved and granted to the Plaintiff constituted an amendment to the contract the Plaintiff had with BU.

136. For a time those accommodations were implemented and formed the basis of the contract by a course of performance by the Plaintiff.

137. Plaintiff provided consideration by enrolling, paying tuition, and participating in the doctoral program and providing services to BU as an employee as was expected and as was a term and condition of her enrollment in the Ph.D. program.

138. Boston University was obligated to implement approved accommodations and follow its established academic and administrative procedures.

139. Defendants breached those obligations by failing to implement accommodations and by deviating from established procedures.

17

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

140.     As a result of the breach, Plaintiff was denied accommodations.

141.     As a result of the breach by denial of accommodations, Plaintiff failed the qualifying examination.

142.     As a result of the breach by denial of accommodations leading to the failing of the qualifying examination, the Plaintiff was dismissed from the Ph.D. program.

143.     As a direct and proximate result, Plaintiff suffered damages.

## COUNT VIII – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

144.     Plaintiff incorporates the foregoing allegations.

145.     Boston University owed Plaintiff a duty of good faith and fair dealing in the performance of its contractual obligations.

146.     Defendants acted in bad faith by interfering with accommodations and manipulating academic processes.

147.     Defendants acted in bad faith by not affording the Plaintiff the well-known rights and protections afforded to disabled persons under the law.

148.     Defendants deprived Plaintiff of the benefits of her contractual relationship with the University.

149.     As a direct and proximate result, Plaintiff suffered damages.

## COUNT IX – PROMISSORY ESTOPPEL

150.     Plaintiff incorporates the foregoing allegations.

151.     Boston University made clear and definite promises regarding the provision and implementation of accommodations.

18

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

152.    Thes clear and definite promises constituted an amendment to the contract for the Plaintiff's enrollment and continuation in the Ph.D. program and sitting for the qualifying examination.

153.    Plaintiff reasonably relied on those promises in good faith.

154.    Plaintiff reasonably relied on those promises to her detriment.

155.    Defendants failed to honor those promises.

156.    Plaintiff suffered harm as a result of her good faith and detrimental reliance.

## COUNT X – VIOLATION OF THE MASSACHUSETTS EQUAL RIGHTS ACT (G.L. c. 93, § 102)

157.    Plaintiff incorporates the foregoing allegations.

158.    Plaintiff is a person entitled to the protections of the Massachusetts Equal Rights Act, G.L. c. 93, § 102.

159.    G.L. c. 93, § 102 guarantees that all persons shall have the same rights enjoyed by other citizens to make and enforce contracts and to enjoy the full and equal benefit of laws and proceedings for the security of persons and property, free from discrimination on the basis of disability.

160.    Plaintiff had contractual and legal rights arising from her enrollment at Boston University, including the right to receive educational services, to participate in the doctoral program, and to have approved disability accommodations implemented in accordance with University policy and law.

161.    Defendants intentionally interfered with Plaintiff's contractual and legal rights by failing to implement approved accommodations, reducing and modifying such accommodations without justification, and subjecting Plaintiff to unequal and discriminatory treatment.

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

162.     Defendants knew or should have known that the interference with the Plaintiff's accommodations would have the effect of negatively impacting the Plaintiff's performance on the qualifying examination, because, *inter alia,* the Plaintiff did not have a level playing field by which to complete on said examination.

163.     Defendants knew or should have known that the interference with the Plaintiff's accommodations would have the effect of derailing her ability to continue in the Ph.D. program but for a passing grade on the qualifying examination that was directly tied to her ability to continue in the program.

164.     Defendants deprived Plaintiff of the full and equal benefit of her contractual relationship with Boston University and of the laws governing disability protections.

165.     Defendants' conduct was intentional, knowing, and in reckless disregard of Plaintiff's rights, and was motivated, at least in part, by discriminatory animus toward Plaintiff's disability and her request for accommodations.

166.     As a direct and proximate result of Defendants' conduct, Plaintiff was denied equal access to the doctoral program, failed her qualifying examination, and was dismissed.

167.     Plaintiff suffered damages as a result of Defendants' conduct.

## COUNT XI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

168.     Plaintiff incorporates the foregoing allegations.

169.     At all times relevant, Defendants owed Plaintiff a duty of care arising from their roles as faculty, administrators, and institutional decision-makers responsible for

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

safeguarding the well-being of students, implementing disability accommodations, and ensuring equal access to academic programs.

170.    Defendants knew that Plaintiff was a doctoral student with a documented traumatic brain injury and that she was medically vulnerable, including suffering from cognitive impairments, fatigue, and visual processing limitations.

171.    Defendants further knew that Plaintiff's ability to function academically—and to avoid further injury—depended on the proper implementation of approved accommodations.

172.    Defendants knew or should have known that failure to implement such accommodations, and the imposition of prolonged, high-stakes academic demands without those accommodations, would create a substantial and foreseeable risk of serious emotional and physical harm.

173.    Defendants breached their duty of care by, among other things:

(a) failing to implement accommodations approved by Disability & Access Services;

(b) arbitrarily reducing and modifying those accommodations contrary to medical recommendations and institutional determinations;

(c) permitting unauthorized individuals to interfere with and override accommodation decisions;

(d) subjecting Plaintiff to an irregular and high-stakes qualifying examination without the supports necessary to accommodate her disability; and

(e) disregarding the known risks associated with forcing Plaintiff to perform under conditions that exacerbated her injury.

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

174.    Defendants knew or should have known that their conduct would cause Plaintiff significant emotional distress and would aggravate her existing medical condition.

175.    As a direct and proximate result of Defendants' negligence, Plaintiff experienced severe emotional distress, including but not limited to anxiety, panic, humiliation, loss of confidence, and profound stress associated with the loss of her academic career.

176.    Defendants' conduct also caused a worsening of Plaintiff's underlying traumatic brain injury symptoms, including increased cognitive impairment, fatigue, and diminished ability to concentrate and process information.

177.    Plaintiff's distress was not fleeting or trivial, but substantial, enduring, and directly tied to Defendants' actions.

178.    Plaintiff's emotional distress is supported by objective symptomatology, including medical documentation, treatment, observable manifestations of distress, and the exacerbation of her diagnosed neurological condition.

179.    A reasonable person in Plaintiff's position—facing the loss of a doctoral career while being denied medically necessary accommodations—would have suffered similar distress.

180.    In addition to those damages referenced above, as a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer significant damages, including but not limited to:

(a) Loss of educational opportunity, including the inability to complete her doctoral degree;

(b) Loss of career trajectory, including the disruption and derailment of her intended academic and professional path in research, teaching, and related fields;

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

(c) Loss of earning capacity, both past and future, including diminished ability to obtain academic appointments, research positions, and other professional opportunities consistent with her training and qualifications;

(d) Economic losses associated with delayed or foregone career advancement, including lost wages, benefits, and professional opportunities;

(e) Medical and life care expenses, including the need for ongoing treatment, monitoring, and support related to the exacerbation of her traumatic brain injury and associated symptoms;

(f) Future care needs, including accommodations, therapies, and limitations affecting her ability to work, study, and function at her prior level;

(g) Emotional and psychological harm, including anxiety, depression, humiliation, and loss of enjoyment of life; and

(h) Other consequential damages resulting from the loss of her academic standing, professional identity, and expected career progression.

### <u>COUNT XII – FRAUD (AND, IN THE ALTERNATIVE, NEGLIGENT MISREPRESENTATION)</u>

181.    Plaintiff incorporates the foregoing allegations.

182.    Defendants, individually and collectively, knowingly made material representations of fact to Plaintiff regarding the approval, implementation, and enforcement of disability accommodations necessary for her continued participation in the doctoral program.

183.    These representations included, but were not limited to, formal determinations by Disability & Access Services that Plaintiff would receive specified accommodations, including extended time and related academic adjustments, and that such

23

accommodations would be implemented in accordance with Boston University's policies and applicable law.

184.    Defendants further represented, expressly and by necessary implication, that Plaintiff would be afforded a fair and academically appropriate qualifying examination process consistent with her coursework, research focus, and approved accommodations.

185.    These representations were material and were made to induce Plaintiff to continue in the program and to proceed with the high-stakes qualifying examination.

186.    At the time these representations were made, Defendants knew that they were false, or made them with reckless disregard for their truth, in that Defendants had already determined or intended that:

(a) the approved accommodations would not be fully implemented;

(b) such accommodations would be reduced, overridden, or disregarded; and

(c) the examination process would not be administered in a manner consistent with the representations made to Plaintiff.

187.    Defendants further knew that Plaintiff, as a doctoral student with a documented traumatic brain injury, was uniquely dependent on the accuracy of these representations in order to protect her health, academic standing, and future career.

188.    Defendants made these representations with the specific intent that Plaintiff would rely upon them and proceed with the qualifying examination under materially false pretenses.

189.    Plaintiff reasonably and justifiably relied upon Defendants' representations, including by continuing her enrollment, preparing for the qualifying examination, and

24

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

ultimately taking the examination under the belief that she would receive the approved accommodations and be evaluated fairly.

190. In truth, Defendants failed and refused to implement the approved accommodations, interfered with and reduced such accommodations, and subjected Plaintiff to an irregular, pretextual, and outcome-driven examination process.

191. Defendants' representations were therefore false and were part of a course of conduct designed to induce Plaintiff into a process that Defendants knew was fundamentally unfair and materially different from what had been promised.

192. Defendants' conduct was intentional, willful, and undertaken in bad faith, and constituted a knowing deception of Plaintiff.

193. In the alternative, to the extent Defendants did not act with actual knowledge of falsity, they made such representations negligently, without reasonable care or competence in ensuring that the information communicated to Plaintiff was accurate and reliable.

194. Defendants knew or should have known that Plaintiff's reliance was not only foreseeable but inevitable, given her position, medical condition, and dependence on institutional determinations.

195. As a direct and proximate result of Defendants' fraudulent and/or negligent misrepresentations, Plaintiff:

(a) took the qualifying examination without the necessary accommodations;

(b) was placed at a substantial and unfair disadvantage;

(c) failed the examination;

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

(d) was dismissed from the doctoral program; and

(e) suffered the damages described herein.

196.     Defendants' conduct, including their knowing misrepresentations and deliberate deception, was of such a character as to warrant the imposition of enhanced damages.

197.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered substantial damages, including but not limited to those set forth above and incorporated into this paragraph by reference, in addition to those damages to be proven at trial.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendants violated applicable law;

B. Order reinstatement to the doctoral program with full accommodations;

C. Order administration of a new qualifying examination under lawful conditions;

D. Award compensatory damages;

E. Award emotional distress damages;

F. Award consequential damages;

G. Award punitive damages where permitted;

H. Award attorneys' fees and costs;

I. Award interest; and

J. Grant such other relief as the Court deems just and proper.

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

## <u>JURY DEMAND</u>

The Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

HILARY MAHAR,

By her attorneys.

FARRELL LAW GROUP PLLC

/s/ Peter S. Farrell

_____

Peter S. Farrell (BBO#656512)
46 Railroad Avenue, Suite 204
Duxbury, Massachusetts 02332
(781) 934-3934
pfarrell@farrelllg.com

Date:  April 22, 2026

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

## <u>VERIFICATION</u>

I, Hilary Mahar, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that:

I am the Plaintiff in the above-captioned action; I reviewed the foregoing Verified Complaint; and the facts stated therein are true and correct to the best of my knowledge, information, and belief.

Executed on this 22nd day of April, *2026*.

*Hilary Blythe Mahar*
_____

Hilary Mahar

Doc ID: 97fc83a90bb5f22d95130a504f2e406bdaafd929

**Dropbox** Sign

Audit trail

| | |
|---|---|
| **Title** | Federal Court - Verified Complaint and Jury Demand - Final -... |
| **File name** | Federal%20Court%2...20-%204-22-26.pdf |
| **Document ID** | 97fc83a90bb5f22d95130a504f2e406bdaafd929 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from app.clio.com**

## Document History

| | | |
|---|---|---|
| **SENT** | **04 / 22 / 2026**<br>15:28:05 UTC | Sent for signature to Hilary Mahar (hilarymahar@gmail.com) by services@clio.com acting on behalf of jporreca@farrelllg.com<br>IP: 72.14.90.219 |
| **VIEWED** | **04 / 23 / 2026**<br>17:09:02 UTC | Viewed by Hilary Mahar (hilarymahar@gmail.com)<br>IP: 73.190.67.49 |
| **SIGNED** | **04 / 23 / 2026**<br>17:15:26 UTC | Signed by Hilary Mahar (hilarymahar@gmail.com)<br>IP: 73.190.67.49 |
| **COMPLETED** | **04 / 23 / 2026**<br>17:15:26 UTC | The document has been completed. |

Powered by **Dropbox** Sign