**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HILARY MAHAR,<br><br>Plaintiff,<br><br>v.<br><br>BOSTON UNIVERSITY, SIOBHAN O'MAHONY, and JONATHAN WHITE,<br><br>Defendants. | Civil Action No. 1:26-cv-11900-MJJ |

# DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Trustees of Boston University ("BU"), Siobhan O'Mahony, and Jonathan White respectfully submit this memorandum in support of their Partial Motion to Dismiss Plaintiff Hilary Mahar's Amended Complaint.[1] For the reasons discussed in detail below, Defendants request that this Court issue an order dismissing with prejudice Counts I, II, III, IV, X, XI, XII, XIII, XIV of Mahar's Amended Complaint in their entirety, and Counts V and VI as against O'Mahony and White. In the alternative, as to Count XII, Defendants request a more definite statement of the alleged fraud, in line with the requirements of Rule 9(b).

[1] Cases in this jurisdiction support the view that a partial motion to dismiss stays the requirement to answer the remaining counts. *See Nat'l Cas. Co. v. OneBeacon Am. Ins. Co.*, No. 12-cv-11874-DJC, 2013 WL 3335022, at *6 (D. Mass. July 1, 2013)); *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 122 (D. Mass. 2001) (a partial motion to dismiss suspends the time to answer the claims not subject to the motion). Should the Court disagree, Defendants respectfully move to extend the deadline for filing an answer on the remaining claims until after the Court rules on this Partial Motion to Dismiss.

## BACKGROUND

### I. Factual Background[2]

Mahar was a graduate student in the Strategy and Innovation Department of BU's Questrom School of Business beginning in August 2022. ECF No. 4, ¶ 13. She alleges that during the relevant timeframe, her coursework, GPA, and research all met the academic standards of that department. *Id.* ¶¶ 14-16. She further alleges that, at various times during her doctoral studies, she functioned as a BU employee, in addition to her role as a student. *Id.* ¶¶ 17-26.

In May 2024, Mahar suffered a mild traumatic brain injury ("mTBI"). *Id.* ¶ 27. She alleges that, because of her mTBI, she experienced cognitive impairments, including processing, speed limitations, fatigue, and difficulties with sustained concentration. *Id.* ¶ 29. She alleges that she reported her injury to BU's Disability and Access Services office ("DAS"), which determined that she could continue her doctoral studies pursuant to certain specified accommodations, including extended time for examinations. *Id.* ¶¶ 32-33. However, Mahar alleges that her advisor, Siobhan O'Mahony, "expressed hostility" towards those accommodations and "interfered with [their] implementation." *Id.* ¶¶ 36-38. As a result, she alleges, Jonathan White, acting within the scope of his BU employment at DAS, reduced or modified the previously approved accommodations "without adequate medical, procedural, or policy-based justification." *Id.* ¶ 39.

Mahar asserts a number of complaints related to her qualifying exam. First, she alleges that the exam was administered without the full accommodations originally approved by DAS.

---

[2] Although Defendants dispute many of Mahar's allegations, they recite the allegations as pleaded in the Amended Complaint for the limited purpose of this Partial Motion to Dismiss.

*Id.* ¶ 44. Second, she alleges that the exam did not sufficiently relate to her academic program and "was heavy in subject matter that was more in line with the department of her advisor, O'Mahony, who had just changed departments." *Id.* ¶ 45. Third, she alleges that BU "failed to provide clear standards, criteria, or consistent procedures governing the examination." *Id.* ¶ 47. Mahar alleges that, because of these issues, she failed her qualifying exam and was accordingly dismissed from the doctoral program, causing her "significant damages." *Id.* ¶¶ 57-58, 62.

Mahar also asserts claims relating to an academic article, "Navigating Pedagogical Dilemmas When Fields Are in Flux." *Id.* ¶¶ 198-232. She alleges that she co-authored the article with O'Mahony and Douglas Hannah and that she was listed as its second author up until publication. *Id.* ¶¶ 199, 206, 215. When the article was published, however, it allegedly listed only Hannah and O'Mahony as authors. *Id.* ¶ 213. Mahar alleges that O'Mahony "intentionally did not include [Mahar's] name in the list of authors" and that leaving her name off was copyright infringement and the provision of "false copyright management information." *Id.* ¶¶ 217, 219. She further alleges that the omission cost her relationships with "potential employers," who "see articles in Academy of Management publications and offer jobs to those with authorship credentials." *Id.* ¶¶ 223-224. She also alleges that the omission was retaliation for her complaints of disability discrimination. *Id.* ¶¶ 226-228.

## II. <u>Procedural History</u>

On August 27, 2025, Mahar filed a Charge with the Massachusetts Commission Against Discrimination (MCAD), purporting to bring claims of disability discrimination and retaliation under Mass. Gen. Laws ch. 151B, Title VII of the Civil Rights Act of 1964, § 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, and the Massachusetts Equal Rights Act, Mass. Gen. Laws ch. 93, § 102. On January 19, 2026, BU, O'Mahony, and White moved to dismiss the Charge for lack of jurisdiction, where the

Charge raised claims pertaining only to Mahar's academic status and the accommodations provided to her as a student.[3] Mahar did not respond to the motion.

On April 27, 2026, Mahar filed this action. She filed the Amended Complaint on July 28, 2026. The Amended Complaint contains fourteen counts, including several related to disability discrimination and retaliation under ch. 151B (Counts I-IV), the ADA (Count V), and the Rehabilitation Act (Count VI); a variety of contract and quasi-contract claims (Counts VII-X); negligent infliction of emotional distress (Count XI); fraud (Count XII); and two claims related to the article authorship dispute (Counts XIII-XIV).

**STANDARD OF REVIEW**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing plausibility, the court does not credit "mere conclusory statements" or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

Rule 9(b) imposes additional pleading requirements on allegations sounding in fraud. Fed. R. Civ. P. 9(b). Under that rule, a party must state "with particularity the circumstances constituting fraud or mistake." *Id.* This requires that a plaintiff specifically plead the time, place,

[3] The Commission is an agency of limited jurisdiction. As relevant here, it enforces Massachusetts anti-discrimination laws on employment, housing, and credit through Mass. Gen. Laws ch. 151B, and anti-discrimination laws on public accommodations through Mass. Gen. Laws ch. 272, §§ 92A, 98, and 98A. It also has jurisdiction to enforce Mass. Gen. Laws ch. 151C, which governs educational institutions, but it may act under that chapter only on a petition from a person "*seeking admission* as a student to any educational institution, or enrolled as a student *in a vocational training institution*." Mass. Gen. Laws ch. 151C, § 3(a) (emphasis added).

and content of the alleged false representation. *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 22 (1st Cir. 2017). In addition, the plaintiff must identify "the basis for inferring scienter." *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009). In application, this renders a "general averment of the defendant's 'knowledge' of material falsity" insufficient. *Id.* (quoting *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992), *superseded on other grounds by* Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737). Instead, a plaintiff must put forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Id.*

## ARGUMENT

### I. Chapter 151B (Counts I-IV)

Mahar's ch. 151B claims must be dismissed because she challenges academic decisions, not employment practices.

Chapter 151B prohibits employers from engaging in certain employment practices, such as refusing to hire or discharging an employee on the basis of specifically delineated protected characteristics, including age, race, color, religion, national origin, sex, gender identity, sexual orientation, genetic information, pregnancy, military service, and disability. Mass. Gen. Laws ch. 151B, § 4. The provision specific to disability makes it unlawful for an employer "to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved." *Id.* § 4(16). This provision describes actions that an employer is prohibited from taking with respect to a person's employment. *Id.*

Chapter 151B does *not* regulate how a university administers a doctoral program. Rather, the Legislature addressed discrimination by educational institutions in a separate chapter, Mass.

Gen. Laws ch. 151C, and drew that chapter narrowly: a private right of action under ch. 151C "extends only to '[a]ny person seeking admission as a student' or to students enrolled 'in a vocational training institution.'" *Awad v. Cutone*, No. 18-cv-12022-MBB, 2021 WL 3773336, at *5 (D. Mass. Aug. 24, 2021), *aff'd* No. 21-1829, 2024 WL 4533596 (1st Cir. Sept. 24, 2024) (quoting *Shervin v. Partners Healthcare Systems, Inc.*, No. 10-cv-10601-RWZ, 2010 WL 5185384, at *1 (D. Mass. Dec. 15, 2010)). Narrower still, the only unfair educational practice in ch. 151C that relates to disability is excluding a student "from admission" because that student "is blind or deaf or requires the use of a dog guide." Mass. Gen. Laws ch. 151C, § 2(e).

Having received (but not responded to) a motion to dismiss on this basis at the MCAD, Mahar anticipated this deficiency in her case. Accordingly, she devotes a substantial portion of her Amended Complaint to alleging that she "functioned as an employee of Boston University" at "certain times." ECF No. 4, ¶¶ 17-26. But even if true, those allegations are beside the point because her ch. 151B claims concern only an *academic* course of events—specifically, that DAS approved testing accommodations for her, that those accommodations were reduced, that she sat for and failed her qualifying exam, and that she was subsequently dismissed from the doctoral program. *Id.* ¶¶ 32-61, 77-108. The accommodations at issue were solely academic: Mahar alleges that DAS approved "extended time for examinations and related academic adjustments" and determined that Mahar "remained qualified to continue in her doctoral program." *Id.* ¶¶ 32-33. The interference that Mahar alleges is the reduction of those testing accommodations. *Id.* ¶ 39. And the consequences she alleges are an exam administered without them, *id.* ¶ 44; a failing grade, *id.* ¶ 57; and dismissal from her doctoral program, *id.* ¶ 58. She also alleges issues relating to the content and standards of the exam. *Id.* ¶¶ 45, 47.

Indeed, Counts I through IV all pertain to purely academic issues. Mahar alleges that she was "qualified to participate in Boston University's doctoral program and to perform its essential requirements," *id.* ¶ 79; that she was "denied equal access to educational opportunities," *id.* ¶ 85; and that the right at issue is the right to "reasonable accommodations and equal access to educational opportunities," *id.* ¶ 104.

Notable is what Mahar omits. She does not allege—nor could she—that she sought or was denied any accommodation related to her employment. She does not allege that any teaching fellowship or research assistant position was terminated, reduced, or non-renewed. She does not allege that her wages, hours, or any other term of her employment changed. And she does not allege that the qualifying exam was a duty of any BU position or a condition of her employment. Indeed, all of her allegations of wrongdoing pertain to her capacity as a doctoral candidate, and BU is alleged to have made the decisions that she attacks in its capacity as an educational institution, the precise area in which "universities deserve great leeway in their operations." *Guckenberger v. Bos. Univ.*, 8 F. Supp. 2d 82, 89 (D. Mass. 1998) (quoting *Cohen v. Brown Univ.*, 991 F.2d 888, 906 (1st Cir. 1993)).

"To establish a prima facie case of disability discrimination [under ch. 151B], a plaintiff must show that (1) she suffers from a disability or handicap; (2) she nevertheless could perform the essential functions of her job, with or without reasonable accommodation, and (3) her employer took an adverse employment action against her because of her disability." *Callbeck v. Fallon Cmty. Health Plan, Inc.*, No. 4:20-cv-40038-TSH, 2020 WL 4735545 (D. Mass. Aug. 14, 2020) (citing *Sensing v. Outback Steakhouse of Fla., LLC*, 575 F.3d 145, 154 (1st Cir. 2009); Mass. Gen. Laws ch. 151B, § 4(16). Mahar's allegations do not satisfy the second or third elements. As to the second, as discussed above, the accommodations she identifies are academic,

and she nowhere alleges that she sought or was denied an accommodation for any teaching or research duty, or that her handicap impaired her ability to perform any BU position. As to the third, she fails to identify an adverse employment action. The actions she complains of—interference with accommodations, imposition of irregular examination conditions, failure of the qualifying examination, and dismissal" from the doctoral program, *id.* ¶¶ 82, 84-85—are all academic determinations. Count I must accordingly be dismissed. *See Doe No. 99 v. Cheffi,* 105 Mass. App. Ct. 704, 707 (2025) (holding that ch. 151B does not apply to a former high school student who asserted only claims pertaining to allegedly unfair educational practices, not employment practices).

Mahar's other ch. 151B claims fare no better. Count II, which alleges retaliation, prohibits discrimination against a person "because he has opposed any practices forbidden under this chapter." Mass. Gen. Laws ch. 151B, § 4(4). The conduct Mahar identifies as protected is her request for "disability accommodations," ECF No. 4, ¶ 89, *i.e.*, the same academic testing accommodations previously described. Because ch. 151B does not govern a university's academic accommodations, a request for them is not opposition to a practice the chapter forbids, and Mahar has not engaged in protected conduct within the meaning of § 4(4). *Cheffi*, 105 Mass. App. Ct. at 707.

Count IV, which alleges interference, makes it unlawful "to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter." *Id.*, § 4(4A). Mahar identifies the right at issue as the right to "reasonable accommodations and equal access to educational opportunities," ECF No. 4, ¶ 104, but ch. 151B grants no right to equal access to educational opportunities and provides no recourse for the alleged failure to provide such access. *Cheffi*, 105 Mass. App. Ct. at 707.

Finally, Count III alleges that O'Mahony and White aided and abetted BU's discrimination in violation of ch. 151B, § 4(5). Such a claim is "entirely derivative of the discrimination claim," and requires the plaintiff to show "(1) that the defendant committed a wholly individual and distinct wrong . . . separate and distinct from the claim in main; (2) that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender; and (3) that the aider or abetter knew of his or her supporting role in an enterprise designed to deprive the plaintiff of a right guaranteed him or her under ch. 151B." *Lopez v. Commonwealth*, 463 Mass. 696, 713 (2012) (cleaned up). Count III fails at the threshold because Mahar has failed to state any valid underlying claim.

For all these reasons, Counts I through IV must be dismissed.

## II. Americans with Disabilities Act (Count V) and Rehabilitation Act (Count VI)

Mahar's next claims are brought under Title III of the ADA[4] and the Rehabilitation Act and appear to be directed at all the Defendants. *See, e.g.*, ECF No. 4, ¶¶ 113-117, 126, 129-130. Because O'Mahony and White are not proper defendants under either statute, both claims must be dismissed against them.

Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation *by any person who owns, leases (or leases to), or operates a public accommodation*." 42 U.S.C. § 12182(a) (emphasis added). Mahar

[4] Although the Amended Complaint does not identify which title of the ADA it invokes, Mahar alleges that BU is "a place of public accommodation within the meaning of the ADA," ECF No. 4, ¶ 110, a term of art belonging to Title III, under which a private university is covered as a "postgraduate private school, or other place of education," 42 U.S.C. § 12181(7)(J). Her allegation that she was denied "full and equal" access likewise tracks Title III's operative prohibition. *See id.* § 12182(a).

does not allege that either individual defendant owns, leases, or operates BU, and indeed they do not: O'Mahony is described as "a faculty member and advisor employed by BU," ECF No. 4, ¶ 9, and White as "an administrator within BU's Disability & Access Services office," *id.* ¶ 10. By way of comparison, in *Guckenberger v. Bos. Univ.*, a session of this Court permitted a Title III claim to proceed against BU's former president and then-chancellor, who was "in a position of authority and discretion such that he may be deemed to 'operate' the university," but dismissed the claim against an assistant to the president, whose role did not carry the requisite authority. *Guckenberger v. Bos. Univ.*, 957 F. Supp. 306, 323 (D. Mass. 1997). Like the assistant in *Guckenberger*, and unlike its chancellor, Mahar's allegations do not—and indeed could not—place either O'Mahony or White in a position of authority over BU's operations.

Similarly, § 504 of the Rehabilitation Act reaches only the recipients of federal funds. 29 U.S.C. § 794(a). While Mahar alleges that BU "receives federal financial assistance," ECF No. 4, ¶¶ 8, 124, neither O'Mahony nor White is alleged to be a recipient of federal financial assistance within the meaning of the statute. Under similar circumstances, courts in this circuit have held that § 504 affords no individual liability. *See, e.g.*, *Toledo-Colon v. Puerto Rico*, 812 F. Supp. 2d 110, 117 (D.P.R. 2011) (dismissing Rehabilitation Act claims against individual defendants because the statute does not provide for individual liability); *Millay v. Surry Sch. Dep't*, 2009 WL 5184398 at *9 (D. Me. Dec. 22, 2009) (recommending same).

Counts V and VI must accordingly be dismissed as against O'Mahony and White.

## III. **Massachusetts Equal Rights Act (Count X)**

In Count X, Mahar alleges that BU, O'Mahony, and White violated § 102 of the Massachusetts Equal Rights Act. ECF No. 4, ¶¶ 158-159. But that statute does not cover disability: it provides that "[a]ll persons within the commonwealth, *regardless of sex, race, color, creed or national origin*, shall have . . . the same rights enjoyed by white male citizens, to make

and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property." Mass. Gen. Laws ch. 93, § 102(a) (emphasis added). There are no allegations in the Amended Complaint concerning Mahar's sex, race, color, creed, or national origin. Accordingly, because § 102 does not cover the disability-related conduct that Mahar alleges, this claim must be dismissed.

## IV. Negligent Infliction of Emotional Distress (Count XI)

In addition, Mahar's claim for negligent infliction of emotional distress fails because BU owed her no duty in the administration of her doctoral program.

To recover for negligent infliction of emotional distress (NIED), a plaintiff must prove "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Sullivan v. Bos. Gas Co.*, 414 Mass. 129, 132 (1993) (quoting *Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982)). To establish the negligence prong of an NIED claim, a plaintiff must show, among other requirements, "that the defendant owed the plaintiff a duty of reasonable care." *Steiner v. eBay, Inc.*, 795 F. Supp. 3d 144, 171 (D. Mass. 2025) (quoting *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 338 (1st Cir. 2022)).

Mahar alleges that BU, O'Mahony, and White owed her a duty of care "arising from their roles as faculty, administrators, and institutional decision-makers responsible for safeguarding the well-being of students, implementing disability accommodations, and ensuring equal access to academic programs." ECF No. 4, ¶ 169. Massachusetts law recognizes no duty of that breadth. As the Supreme Judicial Court has explained, "[t]here is universal recognition that the age of *in loco parentis* has passed, and that the duty, if any, is not one of a general duty of care to all students in all aspects of their collegiate life." *Nguyen v. Mass. Inst. of Tech.*, 479 Mass. 436, 451 (2018) (quoting Massie, *Suicide on Campus: The Appropriate Legal Responsibility of College*

*Personnel*, 91 Marq. L. Rev. 625, 640 (2008). "[U]niversities are not responsible for monitoring and controlling all aspects of their students' lives," and "[u]niversity students are young adults, not young children. Indeed, graduate students are adults in all respects under the law." *Id.* Where the Supreme Judicial Court has recognized a duty running from a university to a student, it has done so only in narrow, carefully delineated circumstances involving foreseeable physical harm, such as a student's known suicidal intent, *id.* at 453, or "[w]hen a college or university has actual knowledge of conditions that would lead a reasonable person to conclude that a student on campus is in imminent danger of serious physical harm due to alcohol intoxication, and so intoxicated that the student is incapable of seeking help for him- or herself," *Helfman v. Northeastern Univ.*, 485 Mass. 308, 321 (2020). Mahar invokes nothing of the kind. The duty she asks this Court to recognize and permit her to proceed under—an expansive duty to administer accommodations and examinations non-negligently, enforceable in damages whenever a student is dissatisfied with an academic result—is not recognized in the Commonwealth. It would make courts the reviewers of academic judgment in precisely the area where "universities deserve great leeway in their operations," and it has no basis in Massachusetts law. *Guckenberger v. Bos. Univ.*, 8 F. Supp. 2d at 89.

Independently, if this Court were to credit Mahar's allegations that she was a BU employee—which, for the reasons discussed above, it should not—this claim would be barred by the exclusivity provision of the Massachusetts Workers' Compensation Act (WCA), Mass. Gen. Laws ch. 152, § 24. The WCA provides, in relevant part, that "[a]n employee shall be held to have waived his right of action at common law . . . in respect to an injury that is compensable under this chapter, to recover damages for personal injuries." Mass. Gen. Laws ch. 152, § 24. This provision bars employees from maintaining common-law tort claims against their employer

for injuries that arise out of and in the course of their employment, and Massachusetts courts consistently apply the WCA bar to NIED claims grounded in workplace conduct. *See Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558 (1996) (applying WCA bar to NIED claims arising out of sexual harassment).

In short, Mahar's claims arise out of her status as a student; thus, her NIED cannot proceed because she does not identify a cognizable duty. If, however, the court were to find that she has somehow pleaded employment-related allegations, her NIED claim is barred by the WCA.

## V. **Fraud and (In the Alternative) Negligent Misrepresentation (Count XII)**

To state a claim for fraud, *i.e.*, intentional misrepresentation, under Massachusetts law, a plaintiff must allege that the defendant made a false statement of material fact, knowing it to be false or with reckless disregard for its truth, for the purpose of inducing the plaintiff to act in reliance, and that the plaintiff reasonably relied on the statement to her detriment. *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 471-72 (2009); *Masingill v. EMC Corp.*, 449 Mass. 532, 540 (2007). Negligent misrepresentation requires a plaintiff to show that the defendant "(1) in the course of its business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information." *First Marblehead Corp. v. House*, 473 F.3d 1, 9 (1st Cir. 2006) (quoting *Nota Constr. Corp. v. Keyes Assocs.*, 45 Mass. App. Ct. 15, 19-20 (1998)). Under Rule 9(b) of the Federal Rules of Civil Procedure, alleging either cause of action "requires not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter." *Cardinale*, 567 F.3d at 13.

Count XII of the Amended Complaint asserting fraud and (in the alternative) negligent misrepresentation does not identify which of the Defendants these claims are being brought against. ECF No. 4 ¶¶ 181-197. Nor does the Amended Complaint identify any specific statements on which Mahar's claims are based, nor who is alleged to have them. Rather, it vaguely alleges that "Defendants, individually and collectively, knowingly made material representations of fact to Plaintiff regarding the approval, implementation, and enforcement of disability accommodations necessary for her continued participation in the doctoral program," ECF No. 4, ¶ 182, and that "Defendants further represented, expressly and by necessary implication, that Plaintiff would be afforded a fair and academically appropriate qualifying examination process consistent with her coursework, research focus, and approved accommodations," *id.* ¶ 184. An undifferentiated allegation that three defendants "collectively" made unspecified "representations" tells no defendant what he or she is alleged to have said, which is precisely what the Rule exists to prevent. *See New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir.1987) (noting three purposes of rule 9(b): "(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit'; and (3) to safeguard defendants from frivolous charges which might damage their reputations"). Mahar also fails to adequately plead "the basis for inferring scienter." *Cardinale*, 567 F.3d at 13. She alleges that Defendants "had already determined or intended" not to honor the accommodations, ECF No. 4, ¶ 186, but she pleads no facts supporting this, such as when such an intention formed or who held it.

Where Mahar has not pleaded "the who, what, where, and when of the allegedly false or fraudulent representation," her claim must be dismissed. *Rodi v. Southern N.E. Sch. of Law*, 389

F.3d 5, 15 (1st Cir. 2004). In the alternative, Defendants request a more definite statement of the alleged fraud, in line with the requirements of Rule 9(b).

## VI. Copyright Infringement (Count XIII)

Mahar further alleges copyright infringement, an allegation that rests on her grievance that when an article called "Navigating Pedagogical Dilemmas When Fields Are in Flux" was published, her name was not included as an author. ECF No. 4, ¶¶ 213, 217. This claim fails for multiple reasons.

First, the claim does not describe an infringing act. Its gravamen is that O'Mahony "intentionally did not include [Mahar's] name in the list of authors," that Defendants thereby "infringed upon [Mahar's] copyright," and that they "breached the expectation that [Mahar] would be credited as an author." ECF No. 4, ¶¶ 217, 219, 221. But federal copyright law confers no general right of attribution. Section 106 enumerates the exclusive rights of a copyright owner—reproduction, preparation of derivative works, distribution, public performance, and public display—and attribution is not among them. 17 U.S.C. § 106. Rather, the sole attribution right that Congress created is confined to works of visual art. *Id.* § 106A. Mahar alleges no unauthorized reproduction, distribution, or derivative use of the article, only that her name was left off it. That is not infringement within the meaning of the statute.

Second, Mahar cannot sue a co-author for infringement. The Amended Complaint states that Mahar "co-authored the paper," *id.* ¶ 215, together with Hannah and O'Mahony, *id.* ¶ 199, and that she "was always listed as second author leading up to the publication," *id.* ¶ 215. "The authors of a joint work are co-owners of copyright in the work." 17 U.S.C. § 201(a). Each co-owner holds an undivided interest in the whole, and it follows that a co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright: "each joint author has the right to use or to license the work as he or she wishes, subject only to the obligation to account to

the other joint author for any profits that are made." *Greene v. Ablon*, 794 F.3d 133, 151 (1st Cir. 2015) (quoting *Thomson v. Larson,* 147 F.3d 195, 199 (2d Cir. 1998)). On her own allegations, Mahar and O'Mahony are co-authors, so the claim fails.

Finally, Mahar does not allege that she has registered, or even applied to register, a copyright in the article. For a United States work, "no civil action for infringement of the copyright . . . shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Registration occurs "when the Copyright Office registers a copyright." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 302 (2019). Nothing in the Amended Complaint suggests the article is anything other than a United States work: indeed, Mahar alleges it was published in a United States journal by co-authors at a United States university. ECF No. 4, ¶¶ 205, 213. Therefore, Section 411(a)'s registration prerequisite applies, and no infringement suit may be brought before preregistration or registration is made according to the pertinent regulations.

## VII. <u>Interference with Advantageous Business Relations (Count XIV)</u>

Mahar's final claim is likewise related to her dispute about authorship attribution. Specifically, she alleges that by omitting her name from the article, BU and O'Mahony deprived her of relationships with "potential employers," who, she alleges, "see articles in Academy of Management publications and offer jobs to those with authorship credentials." ECF No. 4, ¶¶ 223-224.

To state a claim for intentional interference with advantageous relations, a plaintiff must allege, among other things, that she "had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship)" and that "the defendant knowingly induced a breaking of the relationship." *Blackstone v. Cashman*, 448 Mass. 255, 260 (2007).

Mahar does not satisfy even the first required element. The Amended Complaint names no employer or prospective employer with whom Mahar had a relationship, nor does it describe any application to, inquiry from, or interview with such an employer or prospective employer. What Mahar supplies instead is a general proposition about how the academic hiring market in her field allegedly functions. The law requires more: it necessitates the allegation of "a present or prospective contract or employment relationship," *id.*, meaning a relationship with an identifiable party that a defendant purportedly disrupted, not the abstract possibility that some unnamed institution might one day have taken an interest in Mahar based on a particular publication. Pleaded at a gross level of generality, her claim does not remotely cross "the line between possibility and plausibility." *Twombly*, 550 U.S. at 557.

Mahar fails to satisfy the second element for the same reason. She must allege that BU or O'Mahony "knowingly induced a breaking of the relationship," *Blackstone*, 448 Mass. at 260, but where the Amended Complaint fails to allege the existence of any such relationship, BU and O'Mahony could not be alleged to have interfered with an unidentified relationship.

Finally, Mahar confusingly alleges that BU "breached and violated its intellectual property policy by failing to have any bona fide procedures in place that could provide for review and supervision of academic faculty submitting works as their own in violation and infringement of [her] copyright" ECF No. 4, ¶¶ 225, 231. To the extent that Mahar intends for her claim to rest on her own relationship with BU, it fails because BU cannot be liable for having interfered as a "third party" to its own relationship with Mahar. *See Blackstone*, 448 Mass. at 260.

**<u>CONCLUSION</u>**

For all the foregoing reasons, Defendants respectfully request that this Court issue an order dismissing with prejudice Counts I, II, III, IV, X, XI, XII, XIII, XIV of Mahar's Amended

Complaint in their entirety, and Counts V and VI as against O'Mahony and White. In the alternative, as to Count XII, Defendants request a more definite statement of the alleged fraud, in line with the requirements of Rule 9(b).

Respectfully submitted,

BOSTON UNIVERSITY, SIOBHAN O'MAHONY, and JONATHAN WHITE,

By their attorneys,

*/s/ Alexandra Arnold*
Alexandra Arnold (BBO #706208)
aarnold@clohertysteinberg.com
Victoria L. Steinberg (BBO #666482)
vsteinberg@clohertysteinberg.com
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, MA 02111
617-481-0160

Dated: October 9, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that this document was served electronically upon all counsel of record filing through the ECF system on October 9, 2026.

*/s/ Alexandra Arnold*
Alexandra Arnold