**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HILARY MAHAR,<br><br>Plaintiff,<br><br>v.<br><br>BOSTON UNIVERSITY, SIOBHAN O'MAHONY, and JONATHAN WHITE,<br><br>Defendants. | Civil Action No. 1:26-cv-11900-MJJ |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

## INTRODUCTION

Defendants seek dismissal with prejudice of Counts I through IV and X through XIV, as well as dismissal of Counts V and VI against the individual Defendants. Their motion improperly treats disputed factual questions as settled, isolates academic aspects of Plaintiff's relationship with Boston University ("BU") from her specifically pleaded employment relationship, and discounts detailed allegations that Defendants knowingly withdrew approved disability accommodations before a decisive examination.

The Verified Amended Complaint alleges far more than dissatisfaction with an academic result. Plaintiff alleges that BU paid her hourly wages, issued her W-2 forms, required her to record her hours through its payroll system, and controlled her work as a Research Assistant and Teaching Fellow. She performed teaching, grading, office-hour, student-support, and course-development duties integral to BU's operations; she taught four courses, including three MBA courses, although only one course was required for her degree. These allegations plausibly establish an employment relationship under the governing, fact-intensive common-law test.

Plaintiff also alleges that BU's Disability and Access Services ("DAS") approved accommodations after reviewing documentation of her traumatic brain injury; that Defendant O'Mahony opposed those accommodations; that Defendant White reduced them without adequate medical or procedural justification; and that BU then required Plaintiff to take a decisive examination without the approved accommodations. Plaintiff further alleges that these conditions worsened her neurological symptoms, caused objectively manifested emotional and physical harm, led to her failure, and resulted in dismissal from the doctoral program.

Those well-pleaded allegations must be accepted as true. They plausibly support the challenged discrimination, interference, emotional-distress, misrepresentation, and copyright-management-information claims. To the extent any count requires greater specificity, the proper alternative is leave to amend—not dismissal with prejudice before discovery into communications and decisions principally within Defendants' possession.

## LEGAL STANDARD

A complaint survives Rule 12(b)(6) when its factual allegations, accepted as true, permit a reasonable inference that the defendant is liable. The plausibility standard does not impose a probability requirement or demand detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

The Court must accept nonconclusory factual allegations as true and draw reasonable inferences in Plaintiff's favor. It may not disregard properly pleaded facts merely because proof of them may appear improbable. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011). The First Circuit recently reiterated that the inquiry focuses on whether the complaint's nonconclusory allegations plausibly narrate a claim for relief, with all reasonable inferences drawn for the nonmovant. *Pitta v. Medeiros*, 90 F.4th 11, 16 (1st Cir. 2024).

Rule 9(b) generally requires a plaintiff alleging fraud to identify the who, what, where, and when of the challenged representation. *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). But when a plaintiff describes a plausible fraudulent scheme and critical communication details are controlled by defendants, dismissal need not be automatic; limited discovery and an opportunity to amend may be appropriate. *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987).

## ARGUMENT

### I. Counts I Through IV Plausibly Allege Employment-Related Disability Discrimination, Retaliation, Aiding and Abetting, and Interference.

Defendants' principal argument is that Plaintiff challenges only academic decisions and therefore cannot proceed under Chapter 151B. That argument depends on rejecting or minimizing the Complaint's employment allegations and drawing inferences against Plaintiff.

The Complaint alleges traditional incidents of employment: hourly compensation, W-2 reporting, payroll administration, required timekeeping, assigned duties, supervision, performance feedback, prescribed teaching methods, and work benefiting BU beyond Plaintiff's degree requirements. The governing common-law inquiry considers multiple aspects of the relationship, particularly the hiring party's right to control the manner and means of the work; no single factor is decisive. *Speen v. Crown Clothing Corp.*, 102 F.3d 625, 630 (1st Cir. 1996). Plaintiff's allegations therefore plausibly establish that she was BU's employee, not merely its student.

The challenged conduct also cannot be compartmentalized at the pleading stage. Plaintiff alleges that her contract with BU governed both her enrollment and her work and that providing services to BU was a term and condition of her doctoral enrollment. She further alleges that dismissal caused lost wages, benefits, earning capacity, and professional opportunities. Because BU allegedly integrated Plaintiff's teaching and research employment with her doctoral status, the

Court cannot determine from the pleadings alone that interference with her accommodations and termination from the program had no effect on her employment.

Chapter 151B prohibits an employer from dismissing or otherwise discriminating against a qualified person because of disability. M.G.L. c. 151B, § 4(16). Plaintiff alleges that she had a documented traumatic brain injury, remained qualified with accommodations, requested and obtained accommodations through DAS, and nevertheless was required to take the determinative examination without them. She alleges that Defendants knew of her disability, departed from established procedures, treated similarly situated nondisabled students differently, and used the examination process as a pretext for an adverse outcome. Taken as true, these allegations plausibly support Count I.

The retaliation, aiding-and-abetting, and interference counts rest on the same concrete conduct. Plaintiff alleges that O'Mahony opposed and obstructed the approved accommodations and that White reduced them without proper justification, despite both Defendants' knowledge of her disability and need for accommodation. She further alleges that their conduct materially enabled BU's discrimination and followed her assertion of disability rights. Because the underlying discrimination claim is adequately pleaded, Defendants' derivative challenge to Counts II through IV also fails.

## II. Count V States a Title III Claim Against Persons Alleged to Have Exercised Operational Control Over the Accommodation Process.

Title III prohibits disability discrimination in the full and equal enjoyment of the services, privileges, advantages, and accommodations of a public accommodation by a person who owns, leases, or operates it. 42 U.S.C. § 12182(a). It specifically prohibits denying participation, providing unequal benefits, using eligibility criteria that screen out persons with disabilities, and failing to make reasonable policy modifications necessary for equal access. *Id.* § 12182(b).

Plaintiff alleges that BU is a place of public accommodation and that O'Mahony and White exercised direct authority over the service at issue—the approval and implementation of disability accommodations. O'Mahony allegedly used her supervisory authority to oppose and interfere with the approved accommodations, while White, the DAS administrator responsible for implementing accommodations, allegedly reduced them without adequate medical or procedural justification. Those allegations permit the reasonable inference that each individual exercised operational control over the accommodation process through which Plaintiff was denied equal access.

Whether their actual authority was sufficient to constitute operation of the relevant service is a fact-bound question that should not be resolved by accepting Defendants' characterization of their roles. The request to dismiss Count V against O'Mahony and White should therefore be denied or, alternatively, Plaintiff should receive leave to plead their operational authority with further specificity.

## III. Any Deficiency in Count VI as to the Individual Defendants Warrants Amendment, Not Dismissal With Prejudice.

Section 504 applies to programs or activities receiving federal financial assistance, and employment-discrimination claims under that statute use the standards applicable under Title I of the ADA. 29 U.S.C. § 794(a), (d). Plaintiff expressly alleges that BU receives federal financial assistance and that Defendants knowingly denied her meaningful access to BU's program by reducing and refusing to implement approved accommodations.

Defendants contend that O'Mahony and White cannot be held individually liable because they are not themselves recipients of federal funding. Even if the Court concludes that Count VI does not presently distinguish individual-capacity from official-capacity conduct with sufficient precision, that pleading issue does not justify dismissal with prejudice. Plaintiff should be

permitted to clarify the capacity in which the individuals are named and the relief sought against them.

**IV. Count XI Plausibly Alleges a Duty Based on Defendants' Undertaking, Foreseeable Physical Harm, and the University-Student Relationship.**

Defendants characterize Count XI as demanding a general university duty to protect graduate students from every aspect of collegiate life. The Complaint alleges a materially narrower duty.

Plaintiff alleges that DAS reviewed her medical documentation, determined that she remained qualified, and approved specified accommodations intended to address processing-speed limitations, fatigue, and impaired concentration caused by her brain injury. Defendants allegedly knew that withdrawing those accommodations before a prolonged, high-stakes examination would risk worsening her condition, yet reduced the accommodations and required her to proceed. The alleged duty thus arises from Defendants' actual knowledge, their undertaking to evaluate and implement medically supported accommodations, and the foreseeable risk of physical aggravation—not from a generalized obligation to supervise all aspects of student life.

Massachusetts determines the existence of a duty by reference to social values, customs, and appropriate social policy. *Conley v. Romeri*, 60 Mass. App. Ct. 799, 801 (2004). The Supreme Judicial Court has recognized that a university-student relationship may carry duties of reasonable care where the university possesses actual knowledge of a foreseeable danger. *Nguyen v. Massachusetts Inst. of Tech.*, 479 Mass. 436, 454 (2018). It has also recognized that a college community's customary protective practices may demonstrate a duty embedded in community consensus. *Mullins v. Pine Manor College*, 389 Mass. 47 (1983). Those principles foreclose Defendants' categorical assertion that a university can owe no duty concerning known risks created by its own handling of a medically necessary accommodation.

The Complaint also adequately alleges cognizable harm. A negligent-infliction claim requires negligence, emotional distress, causation, objectively manifested physical harm, and circumstances in which a reasonable person would experience distress. *Payton v. Abbott Labs*, 386 Mass. 540, 544 (1982). Objective corroboration may include headaches, sleeplessness, concentration problems, and impairments affecting daily life; the sufficiency of such evidence is ordinarily evaluated on a developed evidentiary record. *Sullivan v. Boston Gas Co.*, 414 Mass. 129, 134 (1993). Particularized symptoms such as nausea, shaking, and other physical manifestations may likewise corroborate emotional harm without requiring dismissal at the threshold. *Bresnahan v. McAuliffe*, 47 Mass. App. Ct. 278, 283 (1999).

Plaintiff alleges increased cognitive impairment, fatigue, diminished concentration, impaired information processing, medical treatment, and exacerbation of her diagnosed neurological condition. These are not allegations of mere upset or disappointment. Massachusetts requires objective evidence beyond humiliation, anger, or grief, but it recognizes symptoms reflecting physical manifestations of mental distress. *Gutierrez v. Massachusetts Bay Transp. Auth.*, 437 Mass. 396, 412 (2002). Count XI satisfies that requirement at the pleading stage.

Defendants' alternative workers' compensation argument is equally premature. Their primary position is that the challenged conduct was purely academic; their alternative position is that it arose from employment and is therefore barred. The Complaint alleges overlapping student and employee relationships. The nature and circumstances of the injury cannot be conclusively resolved by selecting whichever characterization favors dismissal.

## V. Count XII Provides Fair Notice, and Any Additional Particularity Should Be Supplied Through Amendment.

Count XII identifies the substance of the representations: DAS formally approved extended examination time and related adjustments; Defendants represented that those accommodations

would be implemented under BU policy; and Defendants represented that Plaintiff would receive a fair qualifying examination consistent with her approved accommodations. It alleges why the representations were false: Defendants had already determined or intended that the accommodations would be reduced or disregarded and that the examination would not be administered as represented. It further alleges reliance and resulting harm: Plaintiff remained enrolled, prepared for the examination, took it without the promised accommodations, failed, and was dismissed.

The Complaint also identifies the relevant participants and their roles. DAS, acting through White, approved and then reduced the accommodations, while O'Mahony allegedly opposed them and communicated her opposition to DAS. These allegations are materially different from a bare assertion that unidentified persons made unspecified statements. They identify the subject, speakers or responsible actors, purpose, falsity, reliance, and resulting loss.

To the extent the precise dates and contents of internal communications are not yet known, the Complaint alleges that Defendants possess emails, memoranda, meeting discussions, grading materials, and faculty deliberations reflecting the decision-making process. Where a complaint outlines a plausible scheme and communication details are particularly within defendants' control, the First Circuit has instructed that dismissal need not be automatic and that discovery followed by amendment may be appropriate. *Becher*, 829 F.2d at 290. At minimum, therefore, the Court should grant Defendants' alternative request for a more definite statement or permit amendment rather than dismiss Count XII with prejudice.

## VI. Count XIII Plausibly Alleges a Claim Concerning False or Altered Copyright Management Information.

Defendants construe Count XIII solely as a conventional infringement claim based on the absence of author attribution. But the Complaint also alleges that Plaintiff coauthored the article,

remained listed as its second author until publication, and was intentionally omitted from the published authorship information. Defendants' own memorandum acknowledges that Plaintiff alleges the provision of "false copyright management information."

Federal law prohibits knowingly providing false copyright management information with intent to induce, enable, facilitate, or conceal infringement. It also prohibits intentionally removing or altering copyright management information while knowing, or having reasonable grounds to know, that the conduct will induce, enable, facilitate, or conceal infringement. 17 U.S.C. § 1202(a)–(b). A person violating those provisions may be liable for actual damages and attributable profits or statutory damages. 17 U.S.C. § 1203(c).

Plaintiff alleges that she coauthored the work and appeared as second author throughout the period leading to publication, but O'Mahony intentionally caused the final publication to identify only Hannah and O'Mahony. She further alleges that the omission was intentional and retaliatory. These allegations plausibly describe the intentional removal or alteration of authorship information and the publication of information identifying an incomplete authorship list.

Defendants' arguments concerning co-ownership and registration address conventional infringement, not the separately alleged removal or falsification of copyright management information. Count XIII should therefore not be dismissed in its entirety. At minimum, Plaintiff should be permitted to amend the count to identify expressly the statutory theory already apparent from the factual allegations.

## VII. Count XIV Should Not Be Dismissed With Prejudice.

Plaintiff alleges that authorship in the relevant publication bears directly on academic employment opportunities and that removing her name deprived her of relationships with

prospective employers who consider those credentials. Defendants argue that the Complaint must identify a particular prospective employer and a specific relationship that was disrupted.

Even if the present allegations do not identify those prospective relationships with sufficient specificity, dismissal with prejudice is unwarranted. The claimed injury concerns employment opportunities allegedly lost because Defendants removed Plaintiff's authorship credit before publication. Plaintiff should be granted leave to identify the prospective relationships and resulting interference more particularly.

**VIII. Count X Should, at Most, Be Dismissed Without Prejudice and With Leave to Amend.**

Defendants contend that the Massachusetts Equal Rights Act provision invoked in Count X does not enumerate disability as a protected classification. If the Court concludes that Count X invokes an inapplicable statutory provision, Plaintiff requests leave to amend the count to conform the pleaded conduct to the legally applicable theory. The alleged conduct—intentional interference with contractual rights through disability-based denial of approved accommodations—remains pleaded in detail. A statutory-labeling issue does not warrant dismissal with prejudice of the underlying factual claim.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Partial Motion to Dismiss. In the alternative, Plaintiff requests leave to amend any count the Court finds insufficiently pleaded rather than dismissal with prejudice.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff respectfully requests oral argument on Defendants' Partial Motion to Dismiss. Defendants seek dismissal with prejudice of eleven counts arising under multiple federal and Massachusetts statutes and common-law doctrines, and the motion presents fact-intensive questions, including the nature of Plaintiff's employment relationship with BU and the individual Defendants' control over the accommodation process. Plaintiff believes that oral argument may assist the Court in resolving these issues.

Respectfully submitted,

HILARY MAHAR,

By her attorney,

FARRELL LAW GROUP PLLC

/s/ Peter S. Farrell
Peter S. Farrell (BBO No. 656512)
46 Railroad Avenue
Duxbury, MA 02332
Telephone: (781) 934-3934
pfarrell@farrelllg.com

Dated: November 9, 2026

## CERTIFICATE OF SERVICE

I, Peter S. Farrell, counsel for Plaintiff Hilary Mahar, hereby certify that on November 6, 2026, pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5.2(a) of the Local Rules of the United States District Court for the District of Massachusetts, I served a true and accurate copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendants' Partial Motion to Dismiss upon the following counsel of record for Defendants Trustees of Boston University, Siobhan O'Mahony, and Jonathan White by electronic mail at the email addresses listed below:

Victoria L. Steinberg, Esq. (BBO #666482)
Alexandra Arnold, Esq. (BBO #706208)
Cloherty & Steinberg LLP
One Financial Center, Suite 1120
Boston, MA 02111
aarnold@clohertysteinberg.com
vsteinberg@clohertysteinberg.com

/s/ Peter S. Farrell
Peter S. Farrell